## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **KRESTEN L. SORENSEN, ET AL** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | **C.A. No. 4:15-cv-00770** |
| **v.** | § | |
| | § | **(JURY DEMANDED)** |
| **BANKERS LIFE AND** | § | |
| **CASUALTY COMPANY,** | § | |
| | § | |
| *Defendant.* | § | |

### AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

  **Plaintiffs Kresten L. Sorensen ("Sorensen") and the Estate of Wanda Sorensen ("the Estate")** file this **Amended Complaint**, and would show the Court and Jury the following:

### JURISDICTION

1.    This lawsuit was originally filed in the Texas State District Court in Harris County, Bankers Life removed this case to this Court pursuant to 28 USC § 1332, 1441 (a) and 1446. Plaintiffs are citizens of Texas and Bankers Life is incorporated in a State other than Texas and the amount in controversy in this case exceeds $75,000.00.

### PARTIES

2.    Plaintiff **Kresten L. Sorensen ("Sorensen")** is an adult male who is the surviving son of the late Wanda Sorensen.   Sorensen is a resident of the Southern District of Texas. Plaintiff **Estate of Wanda Sorensen** is a necessary party to this lawsuit to recover sums due the late Mrs. Sorensen. Sorensen is the Independent Executor through Letters Testamentary issued to him by the County Court on or about March 17, 2014. Defendant **Bankers Life and Casualty Company ("Bankers Life")** has been duly served, and is being served with a copy of this Amended Complaint by serving its Attorney-in-Charge: Lance V. Clack, Esquire.

### BANKERS LIFE'S FAILURE TO MAKE TIMELY SETTLEMENT OFFER

3.    By agreement of the parties, Plaintiffs' provided Defendant with an agreed-upon  additional notice letter pursuant to Tex. Ins. Code § 541.156. and Tex. Civ. Prac. & Rem. Code 17.505.

Defendant did not make any Offer of Settlement pursuant to Tex. Bus. & Com. Code § 17.5052 or Tex. Insurance Code § 541.156.

### Facts

4.     Bankers Life dedicates all and/or a substantial part of its efforts at selling various Insurance Products to American Senior Citizens or either at, near of after retirement age, that targets American Senior Citizens as customers and the products it markets and sells to Senior Citizens, like the late Wanda Sorensen, include Long-Term Care ("LTC") Insurance and Medicare Supplement Insurance ("MedSup"). A substantial portion of Bankers Life's sales in The State of Texas and Southern District of Texas, and throughout America, has consisted and continues to consist of soliciting purchase of LTC and MedSup policies from Senior Citizens.

### Bankers Life's Initial Sale of Long-term Care Policy to Mrs. Sorensen

5.     Bankers Life issued a  Long Term Care Policy ("LTC") Number 202,084, 267, of its Policy Form GR-N250 ("the Policy") TX to Mrs. Sorensen on or about August 25, 2002. The policy is one that Bankers Life created after Mrs. Sorensen's death on or about June 13, 2013 as a representation of the Long-term Care Policy that Bankers Life should have issued and delivered to Mrs. Sorensen in approximately late January or in February of 207 but failed to do so.

6.     Mrs. Sorensen was approximately 76 years old when Bankers Life sold the Policy to Mrs. Sorensen and also sold Mrs. Sorensen a Medicare Supplement Policy ("MedSup"). At the time of the filing of this pleading, Bankers Life has failed to produce the policy.

### Premium Payments for Bankers Life Long-term Care Policy Were Made With Funds Jointly Owned by Wanda Sorensen and Kresten Sorensen

7.     From the inception of her Bankers Life LTC Policy, the Policy's premiums were $216.00 per month to $284.00 per month, and were paid for through an automatic monthly withdrawal by Bankers Life that was a Joint Account owned equally by Wanda Sorensen and her son, Plaintiff Kresten L. Sorensen through Bank of America. Thus, Kresten Sorensen had an equal interest in the funds that paid for the Bankers Life LTC Policy.

As Mrs. Sorensen aged, Plaintiff Kresten Sorensen actually lived with her to take care of her.

However, Mrs. Sorensen's physical condition became more debilitated through the passage of time.

8.     As will be shown below, Bankers Life has admitted that the policy had a "paid up" amount of $12,294.33 which could be used for Caregiver Training, was to provide Home Healthcare Training

that Plaintiff Kresten Sorensen would have had available and utilized to improve care for his Mother in terms of training from a Home Health Care Specialist about risks to his elderly enfeebled Mother, Wanda Sorensen, in areas of the home such as bathroom functions: toileting, and appropriate precautions to take to ensure the safety of Mrs. Sorensen through use of the Policy benefit. Thus, as a co-payee of Bankers Life's LTC premium, Plaintiff Kresten Sorensen, Individually, acquired by his undivided interest in the premiums paid to Bankers Life, the right to have the benefit of the guaranteed Home Healthcare Training under the Policy, or any Policy Bankers Life would have automatically replaced for Mrs. Sorensen and is therefore a "Consumer" pursuant to Tex. Bus. & Com. Code. 17.45 (4) the right to be trained at the expense of Bankers Life to provide his Mother, Wanda Sorensen, in preventing the type of accident that resulted in her death on June 10, 2013.

### The Caregiver Training Policy Provision

9. On Pages 9 and 10 of the Policy the following benefit provision is stated:

**F.    ADDITIONAL COVERED EXPENSES**

...

    2.    **CAREGIVER TRAINING:**

        The charges incurred for Caregiver Training if a Family Member requires home or community-based care. This benefit is subject to a lifetime maximum benefit, per Family Member, equal to the Maximum Weekly Benefit amount payable for Part II Covered Expenses. **The Elimination Period and Restoration of Benefits Provision do not apply to this benefit.**

        **"Caregiver Training"** is a formal instructional program designed to train an informal Caregiver on the care needed to allow a Family Member to remain at home.. Such training may include, but is not limited to, Personal Care Services. (*See definitions under Part II Covered Expenses for Home Health Care)1* and the administration of medications/ Caregiver Training can be provided by a Home Health Care Agency, Nursing Home, Hospital or other agency or healthcare professional qualified by license, training or experience to provide such instruction.

        **"Informal Caregiver"** is a member of the immediate Family or Friend who will provide care to a Family Member on a regular unpaid basis. A member of the immediate Family or a friend who is a healthcare professional and already providing care on an unpaid basis is not eligible for this training.

### Other Policy Provisions

10.    Plaintiffs would have materially benefited from having the benefits of the Policy. would have provided Mr. Sorensen and family members with standards of caregiver training that would have included training of safety measures, including but not limited to the importance of not leaving an elderly woman of Mrs. Sorensen's age and infirmity alone on a toilet or alone in a bathroom.

11.    The Policy provisions that Mr. Sorensen and other Family members were entitled to a $700.00 benefit for safety and appropriate care for Mrs. Sorensen from a duly-qualified home-health care professional as set out in the benefit provisions of the Policy produced by Defendants and on Page 10, ¶, *supra.2*

### Bankers Life's Purported Letter to Mrs. Sorensen Dated 11/14/06

12. By describing Bankers Life's purported letter dated November 14, 2006, Plaintiffs in no way or manner concede that the letter was ever mailed to Mrs. Sorensen by Bankers Life, and assert that Bankers Life has no competent evidence that it ever mailed such a letter to Mrs. Sorensen.

13.    Bankers Life asserts that it mailed Mrs. Sorensen a letter dated 11/14/006, sent, according to Bankers Life, via Regular Mail, notifying her that the Bankers Life LTC premium that had been automatically deducted from the Joint Account that she and Plaintiff Kresten Sorensen owned at Bank of America, would not remain at the same rate for the coverage under her Bankers Life LTC Policy under which she and Kresten Sorensen had been covered since the Policy issued in August of 2002.

14.    Without acknowledging that veracity of Defendant's assertion, Plaintiffs state that Bankers Life has asserted that it never received any type of response from Mrs. Sorensen to the correspondence it asserts was mailed to her on Bankers Life's letterhead date 11/14/06 and signed by "K. Smith, 2[nd] VP Customer Service. Bankers purported letter to Mrs. Sorensen stated that "a new regulation implemented in Texas required Bankers to raise its rates on Mrs. Sorensen's GRN-250 Policy No. 202,084, 627 to "produce adequate premiums over the life of the policy, even under moderately adverse conditions, i.e. a 'rate-stabilized;' policy. The policy you purchased is NOT A rate-stabilized policy.

Bankers letter also stated: "a different methodology is used to determine the initial premium in order to help minimize the possibility of future premium rate increases. Second, a rate-stabilized

---

policy contains a provision which states that if a substantial rate increase is implemented, in adition to the option of continuing your policy at the increased premium rate, you will also be offered the option of 1) reducing your policy's benefits so that the premium costs stay about the same, or 2) accepting a contingent benefit on lapse which converts the policy to a paid-up status."

The letter also stated: "Please be aware that since a rate-stabilized policy is priced to produce adequate premiums over the life of the policy, the initial premiums on this type of policy will be higher than a similar non-rate stabilized policy. However, it is important for you to note that Bankers has recently began implementing a 35 percent increase on your current non-rate stabilized policy form. The premium rate under the rate-stabilized policy **is less than the premium rate on your current non-rate stabilized policy form with the 35% increase.." [Emphasis added.]**

15.     The letter purportedly sent to Mrs. Sorensen by Bankers Life states:

"Since the policy you purchased is not a rate-stabilized policy as required by law, Bankers is offering you one of the following choices:

> "(1)  Obtain the rate-stabilized long-term care policy being offered. There is no underwriting required for the new coverage, and your premium, for this new policy will be based on your age at the time your current policy was issued. A detailed description of the benefit differences is attached. The monthly premium for this GR-N350 policy is $274.69. As previously stated, although the premium for the new rate-stabilized policy is higher than your current policy, it is less than your current policy with the 35% rate increase. We believe this opportunity to switch to a rate-stabilized policy is in your best interest- it is a better policy because the policy benefits are **identical or better [Emphasis added.] and it provides increased protection against future rate increases. Any premiums under your old policy will count towards the contingent benefit on lapse that is available under the new policy.**

> "**2.     Obtain the rate-stabilized long term care policy that is being offered but reduce your current level of benefits in  order to lower the new premium rate down to the level you are currently paying. [Emphasis added.]  Please call the customer service number shown at the bottom of this letter if you want to choose this option.**

> 3.   "**Cancel your long-term coverage. If you decide not to elect either of the two options offered above, or you elect an option above but then lapse your new policy within 12 days following the effective date of your new policy, your benefits will convert to a "paid up" policy. The "paid up" policy will have a shortened benefit period based on the greater of premium that you have paid or 30 times the Maximum Daily Benefit Amount.  If you choose this option, our records indicate that the total amount of premium that you have paid and consequently the total amount of benefits payable under your current policy would be $12,062.42 for WANDA L. SORENSEN.**"

16.  The penultimate paragraph of Bankers Life's letter states what would occur if Mrs. Sorensen, as Bankers Life contends, actually received the letter and did not respond.

"Please discuss these options with your agent or a Customer Service Representative to determine which one would best suit your needs. Because we are not permitted to continue your current policy, <u>unless you select Option 2 or 3, we will automatically convert your policy to a rate-stabilized policy described in Option 1.</u> If you decide that Option 2 or 3 is better suited for you, please contact our Customer Service Department before the Effective Date listed above."

17. Thus, under any of the three options stated in Bankers Life's letter dated 11/14/06, Mrs. Sorensen would not be left naked without any type of Long-term Coverage from Bankers Life.

## Bankers Life attempts to sell Mrs. Sorensen a new LTC Policy without disclosing to her that she already had coverage as a result of its letter of 11/14/05

18.    On or about April 1, 2008, Janice Cobb, a new and inexperienced Bankers Life agent, under the supervision of her managing agent, called upon Mrs. Sorensen in an effort to sell her an additional Bankers Life LTC Policy. At that time, Mrs. Sorensen was 82 years old.

Plaintiffs would show the Court and Jury that Bankers Life had provided *de minimis* training to Agent Cobb, who at or near the time that she met with Mrs. Sorensen, with her managing agent, did not fully understand the insurance products she was selling to America's Senior Citizens, like Wanda Sorensen. In fact, as Bankers Life finally admitted to the Texas Department of Insurance in 2014, Mrs. Sorensen had a "paid-up Policy" in the amount of the premiums she had paid as set out above. Plaintiffs state upon Information and Belief that either Ms. Cobb or her supervisor advised Mrs. Sorensen that her 2002 LTC Policy had lapsed; that Bankers Life's marketing agents, servants and/or employees supplied such information to Mrs. Sorensen, or in the unlikely event that such information came from Mrs. Sorensen, Bankers Life, acting through Agent Cobb and her supervisor, had a duty to advise Mrs. Sorensen that she did, in fact, have, at a minimum, a "Paid-up:" Bankers Life LTC Policy, as described above. Agent Cobb's name appears on the application for a new Bankers Life LTC Policy, but Plaintiffs state on Information and Belief that Mrs. Sorensen as a "lead" was provided to Agent Cobb or her supervisor by Bankers Life, acting through its agents, servants and/or employees. Agent Cobb signed the application, with Mrs. Sorensen and Bankers Life rejected coverage.

At no time did Agent Cobb or her supervisor, as representatives of Bankers Life inform Mrs. Sorensen that she had an existing Bankers Life LTC Policy.

19.    In early March of 2013, Mr. Sorensen reviewed his Mother's personal papers, looking for Insurance Policies, reviewed their joint bank statements and noted automatic deductions on a monthly basis to Bankers Life from their joint Bank of America account.

20.     Mr. Sorensen, with the assistance of Rene Garland and her staff, had a meeting with a Bankers Life representative on or about August 15, 2013, and was told face-to-face that his Mother's LTC Policy had lapsed for nonpayment of premiums.  Despite the fact that Bankers Life had been notified of Mrs. Sorensen's death on June 10, 2013, it posthumously sent Mrs. Sorensen a letter dated October 7, 2013, some four months after her death notifying her that her LTC Policy had lapsed for nonpayment of premiums.   On approximately October 24, 2013, Ms. Garland endeavored to obtain a clearer explanation from Bankers Life as a representative of Mr. Sorensen and achieved no success in obtaining meaningful responses to her questions.

### Mr. Sorensen Complains To The Texas Department of Insurance

21.     On or about October 18, 2013, Mr. Sorensen forwarded an initial complaint to the Texas Department of Insurance ("TDI").  TDI, pursuant to its Administrative Authority, forwarded Mr. Sorensen's complaint to Bankers Life requesting an explanation.  Bankers Life requested additional time to respond.  The, in mid-March of 2014 (5 months after the complaint was filed), Bankers Life, for the first time, admitted to TDI and Mr. Sorensen that its "Customer Service Department" had made an error in the handling of Mrs. Sorensen's LTC Policy; that as Mr. Sorensen believed all along his Mother had LTC coverage with Bankers Life and ultimately offered to refund premiums paid by Mrs. Sorensen, without interest.

### Affirmative Defenses To Defendants' Affirmative Defenses

22.     Defendant's seek to bar all of Plaintiffs' causes of action based upon various affirmative defenses.  To the degree that Defendants have deigned to respond to proper Discovery Requests, Defendants have, to date, disclosed three affirmative defenses:  a)   The four-year statute of limitations bars Plaintiffs' Breach of Contract, Fraud and Breach of Fiduciary Claims because Defendants claim Wanda Sorensen had actual knowledge that she did not have LTC Coverage with Banker Life as a result of the application she signed with Bankers Life's Agent Janet Cobb and her under the direction of her supervisor;  Mrs. Sorensen should have known that there were lesser amounts being deducted from her joint Banker of America account jointly owned with Kresten Sorensen; and third,  neither Mr. Sorensen nor Mrs. Sorensen suffered any damages compensable in Law or in Equity.  (b The two-year Statute of Limitations bars Plaintiffs' two-year causes of action.

23.     Plaintiffs offer the following Affirmative Defenses to Defendants' Affirmative Defenses:

### A.  First Affirmative Defense to Defendant's Limitations Affirmative Defense  The Discovery Rule

Plaintiffs incorporate all of the foregoing facts set out in this pleading by reference.

Bankers Life repeatedly failed in its duties to Mrs. Sorensen under Texas Law including but not limited to the following:

a) As Bankers Life stated to the Texas Department of Insurance in response to its official investigation, Bankers Life admitted it erred: "Bankers did not hear back from the insured and since we were no longer permitted to continue her current policy automatically, we should have converted this Policy to a rate-stabilized Policy as described in Option 1. **However, this was not completed but rather we *ended coverage* [Emphasis added.] (showing lapse status as of January 25, 2007. .... We explained to the Insured's family that the policy lapsed for non-payment of premiums and policy copy was not provided [Emphasis added.] We sincerely apologize for this *oversight* [Emphasis added.] and any concern we may have caused the Insured's Family....*In light of this error....*"**

## Plaintiffs Detrimentally Relied Upon Defendant's Promises and Representations And Their Detrimental Reliance Was Reasonable

24. Plaintiff would show the Court and Jury that they relied to their detriment upon the false promises, misrepresentations and acts and/or omissions as follows:

a. Plaintiffs incorporate all of the factual allegations this pleading by reference herein.

b. Defendants have consistently contended before this Court and in papers filed with TDI, the agency of the State of Texas charged with administrative supervision and investigation of Insurers admitted to do business in the State of Texas and Defendant is so admitted.

c. Bankers Life was privy to the letter of 11/14/06 that it did not disclose to Mr. Sorensen.

d. Bankers Life has admitted that its Customer Service Department and Bankers Life itself, consistently misrepresented the facts of Mrs. Sorensen's coverage to him until Bankers Life's letter to TDI of March 12, 2014.

## B: Second Affirmative Defense To Affirmative Defense of Limitations: Equitable Estoppel

25. Plaintiffs incorporate by reference all of the prior paragraphs of this pleading.

Plaintiff would show the Court and Jury that none of their claims, be they two-year claims or four-year claims are barred by any Statute of Limitations by the Doctrine of Equitable Estoppel.

The doctrine of Equitable Estoppel doctrine of **equitable estoppel** requires: (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations.");

As set out above, every element of the Doctrine of Equitable Estoppel is present: Bankers Life repeatedly falsely represented that the Policy had lapsed only to admit later to TDI it had "erred," Bankers Life, as a Matter of Law, had actual or constructive knowledge of its records.

Agent Cobb, as a Fiduciary to Mrs. Sorensen, had an affirmative duty to disclose to Wanda Sorensen that she actually had a Policy of Bankers Life LTC coverage that Plaintiffs relied to their detriment on Bankers Life's false representations is underscored by Mrs. Sorensen's death and the training benefit that would have prevented it.

### C. Third Affirmative Defense To Defendants' Limitations Defenses Promissory Estoppel

26.     Clearly, Mrs. Sorensen purchased an LTC Policy from Bankers Life and by Bankers Life's own admissions paid premiums to Bankers Life in the amount of $12,062.42.

Without waiving any assertion to the contrary, Plaintiffs point out to the Court and Jury that Bankers Life asserts that it mailed the late Wanda Sorensen a letter dated 11/14/06.

Bankers Life made a promise to Mrs. Sorensen in its letter of 11/14/06. Though Plaintiffs believe the Third Option in the letter governs; Bankers Life administratively and/or judicially confessed that it erred to TDI and that Mrs. Sorensen should have had the benefits of the "paid up LTC Policy, under Bankers Life's assertion as first admitted in its letter dated March 12, 2014, Mrs. Sorensen should have had the benefit of the First Option in the letter of 11/14/06 – which would have involved Mrs. Sorensen paying a higher premium and props up Bankers Life's efforts at avoiding liability in this case by creatively rewriting the foundational letter of 11/14/06 which defaults to the Third Option. Thus, even in letter to TDI dated March 12, 2014, Bankers Life strains to avoid fulfilling its promise by endeavoring to rewrite the letter it relies upon.

40.   Accordingly, Bankers Life's affirmative defenses of limitations, built on tissues of lies and misrepresentations are avoided by the Doctrine of Promissory Estoppel: Bankers Life is estopped from avoiding its Promise and Contract through misrepresentations.

Moreover, the failure of and the failure of Agent Cobb to investigate the background of Mrs. Sorensen's history with Bankers Life and/or Bankers Life's practices of feeding agents such as agent Cobb misleading information should not bar Plaintiffs' claims.

### D. Plaintiffs' Fourth Affirmative Defense to Defendants Limitations Affirmative Defense: Waiver

27.  Plaintiffs would show the Court and Jury that by engaging in a pattern of deceptive trade practices in the State of Texas and other States, Bankers Life engages in harsh business practices to the detriment of its customers and by intentionally and knowingly engaging in conduct that has

resulted in Bankers Life entering into a Multistate Market Conduct Survey and agreeing to pay fines to the Texas Department of Insurance, Bankers Life has knowingly waived any assertion that it has been unaware of the harsh business practices it engaged in as set out in this pleading.

Bankers Life anticipatorily breached its Insurance Contract with Mrs. Sorensen as admitted to TDI and/or as set out in the letter of 11/14/06 that it relies upon and through its anticipatory breach. It has forfeited its affirmative defenses to Plaintiffs' claims for breach of contract and other claims arising from Defendants' breach of contract.

### E. Affirmative Defense To Bankers Life's Affirmative Defense That Plaintiffs Have Not Sustained Damages

28.    Bankers Life has stated in Discovery Responses that Plaintiffs sustained no damages as a result of a prior care of Mrs. Sorensen that would have been available to her had Bankers Life fulfilled its Contract. Plaintiffs incorporate by reference all facts alleged in this pleading. Bankers Life has stated that since Medicare paid for Mrs. Sorensen's care, Plaintiffs sustained no damages.

29.    However, as a Matter of Law, Medicare is always a secondary payor. By engaging in the conduct set out in this petition, Bankers Life illegally shifted a burden and/or cost to the United States Government and Bankers Life is barred from claiming that Plaintiffs and all American Citizens are not harmed through its wrongful conduct as set out in this petition. Knowing its errors in this matter with regard to the No Damages allegations, Bankers Life has an obligation to make restitution to the United States Government for its admitted failures and this matter and may not benefit from asserting that its failure to fulfill its contract bars any portion of Plaintiffs' claims.

### First Claim for Relef: Breach of Contract

30.    Plaintiffs would show the Court and Jury that Defendant materially and substantially breached its Insurance Contract with Wanda Sorensen that was marketed to her in keeping with Defendants' marketing materials as protection for herself and her Family, including Plaintiff Kresten Sorensen.

Plaintiffs incorporate by reference all of the factual allegations pled in this pleading

Defendant Bankers Life materially and substantially breached its Insurance Contract with the late Wanda Sorensen, and Plaintiff Kresten Sorensen as her Attorney-in-Fact and as a Third Party Beneficiary of the contract. Defendant Bankers Life owed the following contractual obligations to Wanda Sorensen:, Mr. Sorensen and her Family: to provide appropriate Caregiver Training up to the amount of the Policy benefit per the terms of the Policy that would have in reasonable likelihood, if provided, prevented the late Mrs. Sorensen's fatal accident.

Without waiving allegations that Bankers Life never mailed Mrs. Sorensen the letter of 11/14/06, Bankers Life owed Mrs. Sorensen policy benefits up to the amount stated in its letter of 11/14/06 in the amount of $12,062.42.

Alternatively, without waiving any of the foregoing, Bankers Life 's original LTC Policy issued in August of 2002 was never terminated; no Notice of Lapse or Notice of Cancellation was ever sent to Mrs. Sorensen, nor can Bankers Life marshal competent evidence that it mailed Mrs. Sorensen the letter dated 11/14/06, and Mrs. Sorensen's benefits under the original Policy were approximately $100,0000.00, or such other sum as the original contract that has not been produced provides. By failing to provided Notice of Cancellation and/or Notice of Lapse as required by both the original Policy and Texas Law, Bankers Life anticipatorily breached the contract, the value of the benefits constitute liquidated damages, that Plaintiffs are entitled including the rate of interest Bankers Life's proceeds have earned since the illegal lapse of Mrs. Sorensen's contact, as reflecting by filings with the Texas Department of Insurance and Securities and Exchange Commission as Bankers Life has unjustly enriched itself through its wrongful acts and/or omissions in this case and that of its agents, servant and/or employees.

Plaintiffs would show that Defendant's material and substantial breach of its LTC Policy with Wanda Sorensen, and the lack of providing the Caregiver Training Benefit to Mr. Sorensen and his Wife, caused serious and substantial injuries to Plaintiff Kresten Sorensen through the alteration of Kresten Sorensen's lifestyle, caused him sever mental distress, anxiety, physical symptoms such as crying and physical sensations of helplessness all foreseeable because of the important role that the Defendants' denial LTC Policy, including but not limited to its Caregiver Training would have afforded Mr. Sorensen and the late Mrs. Sorensen represented by her Estate.

### Second Claim for Relief: Negligence and Gross Negligence

31.    Plaintiffs incorporate by reference all preceding factual allegations in this pleading.

Plaintiffs would show the Court and Jury that a reasonably prudent Long Term Insurance Company would not have committed the acts and/or omissions of Defendants and their duly authorized agents, servants and/or employees, including but not limited to the following:

a) failing to send Mrs. Sorensen a Notice of Lapse or Notice of Cancellation as required by the Original Policy and Texas Law that constitutes Negligence or Negligence *Per Se;*

b) Failing to follow up with Mrs. Sorensen by issuing her default coverage as Defendant admitted it should have done in its letter to TDI dated March 12, 2014;

c) Failing to maintain a competent and/or adequate Customer Service Department to assist Plaintiffs, elderly insured Americans of Bankers Life in the State of Texas

whose problems with Bankers Life demonstrates a pattern of conduct as evidenced by Bankers Life's Settlement with the State of Texas and other States as a result of the Market Conduct Survey;

d) Failing to correct serious problems in its Customer Service Department that interfered with Mr. Sorensen's efforts to learn about his Mother's Policy by outsourcing jobs to foreign countries where low-wage employees with little skills or training take jobs that competent Americans could perform in a manner consistent with American Pride in its business products;

e) Failing to follow up with additional notifications and safety precautions to Mrs. Sorensen as Bankers Life represented to TDI to obtain its 35 percent rate increase;

f) failing to adequately train Agent Cobb so that she could understand the products she was selling;

g) failing to provide Agent Cobb, and/or other similarly situated agents, with accurate information about Mrs. Sorensen's Policy rights, including but not limited to Caregiver Training;

h) each and every act and/or 41.00 omission set out above, taken together, separately or in any combination, with the allegations set out in this pleading Negligence and/or Gross Negligence pursuant to Tex. Civ. Prac. & Rem. Code § 41.001 (11) that when viewed Objectively from the standpoint of Bankers Life, the actor as an LTC Insurer, at the time of the acts and/or omissions set out above, represented an extreme degree of risk to Mrs. Sorensen and the probability and magnitude that Mr. Sorensen and his Wife and Wanda Sorensen confronted potential harm considering the probability and extreme risk involved through Bankers Life's awareness of the serious risk of harm to others;

c) and that Bankers Life with the actual subjective awareness of the risk of harm to elderly Texans and Americans, including but not limited to Wanda Sorensen has and/or had a subjective awareness of the Risk demonstrating conscious indifference to the rights, safety and welfare of others;

### Third Cause of Action: Fraud

32.   Plaintiffs would show the Court and Jury that Defendant committed the Tort of Fraud against Mr. Sorensen, the late Wanda Sorensen as represented by her Estate and that all of the elements of the Tort of Fraud under Texas law are amply demonstrated in this pleading:

Alternatively, without waving any of their foregoing allegations, Plaintiffs state that Bankers

Life, as set out in above in great detail, and incorporated by reference here in made the material representation to the late Wanda Sorensen that she would be covered under a "paid up" Policy in its letter dated on or about 11/14/06 if she did not respond to the letter; Bankers Life knew at the time or near the time that it made its representation that it was false because Bankers Life set up no protocol or safety net that assured that Wanda Sorensen would be delivered confirmation of her new "paid up" policy, with delivery of an Insurance Policy being a requirement of Texas Law; it is obvious that Bankers Life as demonstrated by the letter of 11/14/06 itself and its filings with TDI in support of its rate increase, intended Mrs. Sorensen and other similarly situated Plaintiffs to rely upon the representations made in the letter, specifically the default provision in Option 3 which states -

Bankers Life has never produced any description of detailed benefits under the different options to Mrs. Sorensen. Thus, Bankers Life inferentially knowingly made a false representation., that Mrs. Sorensen was entitled to rely upon and that she obviously did to her detriment since there is No Evidence the "detailed description" was provided.

103. Bankers Life additionally defrauded Mrs. Sorensen, and Mr. Sorensen due to their deprivation of the Caretaker Benefit, that would have in all reasonable likelihood provided training that would have spared Mrs. Sorensen's life on the date of her accident on or about June 6, 2010.

Without waiving any of the foregoing allegations, Plaintiffs submit that the letter of 11/14/06 was ambiguous in that Option 3, assuming *arguendo* that Mrs. Sorensen received the letter was inherently confusing and not clearly distinct from Option 1 in that they overlap.

"(3)    Cancel your long-term care coverage. **If you decide not to elect either of the two options offered above, or you election an option above but then lapse your new policy within 120 days  following the effective date of your new policy (12/25/006 – obscured in upper right-hand corner of letter – not conspicuous), your benefits will convert to a "paid up" policy.  The "paid-up" policy will have a shortened benefit period based on the greater of the premiums paid or 30 times the Maximum Daily Benefit Amount. If you choose this option, our records indicate that the total amount of premium, that you have paid and consequently the total amount of benefits payable under your current policy would be $12,082.42 for WANDA L. SORENSEN.**

The options set out in the 11/14/06 letter clearly overlap and are therefore ambiguous. Option 1 provides a higher premium than Mrs. Sorensen was previously paying by charging the amount of $274.69 but provided her with no explanation of the additional benefits that she would receive for the additional premium.

Bankers Life had actual knowledge from a Branch  Manager that Mrs. Sorensen apparently had not received the letter of 11/14/06:

"From: Jennings, Natalie
Sent:    Tuesday, March 25, 2008, 3:10 P.M.
To:      Anderson, Charles
Subject:  2022084627/401/ Sorensen
Charles-----

   I have just received a phone call from one of my agents that called the 521-3724 number with a LTC question. She asked why Mrs. Sorensen's policy lapsed. The agent was told by a Sherry that the last note she could see was a code that meant a rate increase had occurred and state that no rate increase had been sent to the client. This entire situation seems strange. Can you please find out what happened why it stopped drafting? The client wants her policy. Also, on a side note, Sherry told the agent to e-mail you if there were more concerns. I have asked my agents to go through me directly to you. Please advise, thanks again.

Natalie A. Jennings
Branch Office Administrator
BSSO 417 – Houston South
1833 Egret Bay, Suite 66
Houston, Texas 77058
281-333-9793
Speed 311
Natalie.jennings@bankerslife.com

        Despite Ms. Jennings inquiry, and statement that "Sherry" told the agent a code indicated no letter had been sent and "the whole situation seems strange," and that the client wants her policy, Bankers Life has produced no evidence explaining the nuances of the email that support Plaintiffs contention that Mrs. Sorensen was never mailed the letter of 11/14/06 and has engage in a cover-up, exploiting an elderly insured woman, at the time, 82 years old.

        In this regard, Bankers Life's intent and/or State of Mind, may be inferred by the numerous acts and/or omissions set out in this pleading, the confusing nature of the letter of 11/14/06, systematic denials to Mr. Sorensen of the status of his Mother's LTC Policy, the denial of Bankers Life's representative in meeting with Mr. Sorensen after his Mother's death and insisting her Policy had lapsed, and Bankers Life' ultimate judicial and/or quasi-judicial and/or administrative admissions of its errors in its response to TDI in its letter date March 12, 2014.

## **Fourth Claim for Relief: Violations of Texas Deceptive Trade Practices Act**

33.    All conditions precedent have been met to raise claims pursuant to Tex. Bus. & Com. Code § 17.01, *et seq.*

        Plaintiffs would show the Court and Jury that Plaintiff Kresten Sorensen is a consumer under to Tex. Bus. & Com. Code §17.45 (c) because:

(a)   Mr. Sorensen and his Mother, Wanda Sorensen, shared their funds in a Joint Account With Right of Survivorship which paid the premiums on Mrs. Sorensen Bankers Life LTC Policy

through automatic deduction. Because he and the late Wanda Sorensen paid for her LTC premiums through a Joint Bank Account With A Right of Survivorship through the Bank of America.

(b)   Pursuant to Tex. Estates Code §113.106, Mr. Sorensen was a legal owner of the account from which payments were made for his Mother's Bankers Life LTC Policy.  As a co-owner of the account from which premium payments to Bankers Life were made, Plaintiff Kresten Sorensen had an equal right to the funds that paid for the premiums and an ownership interest in the account from which the premiums were paid.

(c)   Tex. Bus. & Com. Code. § 17.44, the Deceptive Trade Practices Act is to be provided a liberal construction and, as such, Mr. Sorensen was a purchaser of Mrs. Sorensen's LTC Policy.

(d)   Mr. Sorensen was also a consumer pursuant to Tex. Bus. & Com. Code §17.45 (c) because the LTC Policy provided Mr. Sorensen, as a "Family Member" with the service of being entitled to Caretaker Training expressly and logically to be provided to Family Members of Mrs. Sorensen, the Insured under the Policy. Hence, Mr. Sorensen was expressly contemplated by the LTC Policy to be a Consumer of the Caretaker Training, especially vital in view of the facts of this case and entitled to a liberal construction under the statute.

41.   Plaintiffs would show that Defendants knowingly and/or intentionally violated the following provisions of to Tex. Bus. & Com. Code §17.46 (hereinafter referred to as the "DTPA" as follows:

a)   by violating §17.46 by engaging in the following false, misleading and deceptive acts:

b)   violated  §  17.46  (5)  by  Bankers  Life's  agents,  servants  and/or  employees  repeatedly representing to Mr. Sorensen that Mrs. Sorensen did not have a Policy of LTC coverage on numerous occasions, as set out above, and later acknowledging to the Texas Department of Insurance in the letter dated on or about March 12, 2014 to TDI from Bankers Life that Bankers Life had made an error in the handling of Mrs. Sorensen's policy and that she should have been entitled to Option 1, from Bankers Life's perspective;

c)   violating  §  17.46(b)  (21 )of the Act by representing on the face of the Policy that Mrs. Sorensen would be sent a Notice of Lapse prior to loss of her LTC Policy that Bankers Life never did;'

d)   causing confusion to  Mr. Sorensen and Mrs. Sorensen, here the Estate, in failing to explain precisely what occurred regarding the mishandling of Mrs. Sorensen's Policy in violation of §17.46 (b) (2);

e)   by misrepresenting to Mr. Sorensen that Mrs. Sorensen's LTC Policy had lapsed for nonpayment of premiums when such was not the case in violati8on of the Act because such

misrepresentations were unconscionable in violation of §17.50 (a) (3) set out in detail above;

f)  by acting unconscionably in not responding promptly and making a proper and full investigation of the email, quoted in ¶ 105, *supra*, incorporated by reference herein in which a Bankers Life agent, servant and/or employee told a Bankers Life agent, perhaps Ms. Cobb or another agent, that Bankers Life's code indicated Mrs. Sorensen had not been sent a letter – by inference the letter of 11/14/06, or, alternatively a Notice of Lapse;

g)  by subjecting Plaintiff Kresten Sorensen to severe mental anguish given his many efforts to communicate with Bankers Life and sending his deceased Mother a Notice of Lapse letter approximately five months after her death which constitutes unconscionable conduct in violation of § 17..50 (a) (3) of the Act;

h)  by failing to engaging in numerous deceptive and unconscionable acts as detailed in the Multistate Market Conduct Survey in violation of § 17.5 (a) (3) of the DTPA that supported Bankers Life's payment of substantial monetary fines to The State of Texas; said report that is the care, custody and control of Bankers Life regarding misconduct in Texas, as part of a pattern of deceptive conduct that includes the violations set out in this pleading, the multistate Market Conduct Survey detailing Bankers Life's misconduct in Texas is incorporated by reference herein as Plaintiffs will seek production of this document from Bankers Life.

## Fifth Claim for Relief: Violations of Tex. Ins. Code §541: Bankers Life's Unfair Methods of Competition and Unfair, False, Misleading and Deceptive Actions

34.  Bankers Life committed the following violations of the Texas Unfair Claims Settlement Practices Act ("the Act") in Chapter 541 of the Texas Unfair Claims Settlement Practices Act.

Plaintiff Kresten Sorensen, Individually, and as Independent Executor of The Estate of Wanda L. Sorensen ("the Estate) is a Person, as defined by §541.02 (2) as he is an individual who has sustained harm and damages from Bankers Life, also expressly defined as an entity subject to this Law.

a)  The false statement on the front page of the Policy that states that Mrs. Sorensen's Policy would not lapse without her receiving a Notice of Lapse, which she did not receive in violation of § 541.0151 (1)(A) of the Act as a misrepresentation of a statement made on the front of the Policy;

b) Bankers Life knowingly violated § 541.0451 (1) (A) b by submitting a fabricated LTC Policy purporting to be a Policy that covered Mrs. Sorensen, under Bankers Life's dated 11/14/06 and addressed to Mrs. Sorensen.  Bankers Life violated this provision of Law by failing to clearly state to TDI and Mr. Sorensen that it had "created" the fabricated Policy in clear terms that did not

misrepresent its origin and/or characteristics;

c)  Bankers Life knowingly misrepresented to Mrs. Sorensen, either at the time Bankers Life first sold Mrs. Sorensen the original policy in August of 2002 and/or when Agent Janice Cobb met and/or interacted with Mrs. Sorensen the benefits that were, in fact, available under her Bankers Life LTC Policy, as Bankers Life later admitted to TDI by falsely stating to Mrs. Sorensen that her coverage had lapsed in violation of § 541.0451 (1) (B) by misrepresenting that she actually had benefits through Bankers Life

d) Bankers Life knowingly misrepresented to Mr. Sorensen, on repeated occasions beginning in on or about March 11, 2013 by misrepresenting to Mr. Sorensen that his Mother's LTC Policy had lapsed for nonpayment of premiums, when as Bankers Life later admitted to TDI, Mrs. Sorensen did have Bankers Life LTC benefits that would have also provided Caregiver Training for Mr. Sorensen, who was substantially harmed by not being afforded benefits for his Mother, skilled nursing care and the Caregiver Training that would have helped a caring son of Mr. Sorensen's education, training and experience understand inherent Risks to his mother such as toileting without another individual standing by, and other risks that would not naturally occur to Mr. Sorensen, from his standpoint and intelligence, given the many tasks he was performing to care for his Mother in large measure due to Bankers Life's intentional and knowing misrepresentations of the terms of her coverage as set out in this pleading.

Bankers Life knowingly violated the Act by misrepresenting the status of Mrs. Sorensen's coverage to either the late Mrs. Sorensen34s after having actual awareness and/or knowledge, or the manifestation of knowledge within Bankers Life, an entity, that Mrs. Sorensen's putative lapsed LTC coverage was due to an error of Bankers Life as evidenced by the email set out in ¶ 105, *supra.*

### Sixth Claim for Relief

### Violations Under § 541.151 (2)  - Tie-In  Violations With Tex. Bud.  & Com Code 17.46

35.  Bankers Life knowingly violated § 541.0451 of the Act by knowingly committing the violations of the Tie-In DTPA violations of § 17.46  as set out in ¶  110, (a) through (k) which are herein incorporated by reference as if fully set out in this pleading.  These violations by Bankers Life were made with knowledge or knowingly or with sufficient information such as the email set out in Paragraph 105, supra and incorporated by reference herein and also constitutes a knowing unconscionable action under all provisions of the DTPA and Unfair Claims Practices Act regarding misrepresentations of Policy when Bankers Life had knowledge that it fraudulently concealed as set

out in Paragraph 5 in 2008, continued to affirmatively misrepresent the status of Mrs. Sorensen's LTC coverage to Mr. Sorensen in March of 2013 through her death on or about June 10, 2013 and even thereafter until disclosing and confessing to the error that it had actual knowledge of or a reasonable manifestation of in 2008 as reflected in the email.

The benefits that were, in fact, available under her Bankers Life LTC Policy, as Bankers Life later admitted to TDI by falsely stating to Mrs. Sorensen that her coverage had lapsed in violation of § 541.0451 (1) (B) by misrepresenting that she actually had benefits.

### Seventh Claim for Breach of the Common Law Duty and Fair Dealing

36.    Plaintiffs would show that a Common Law Duty of Good Faith and Fair Dealing existed between Mrs. Sorensen and Bankers Life.

A common law Duty of Good Faith and Fair Dealing arises from a "Special Relationship" between the parties. When Bankers Life, acting directly and not through its agents, undertook to secure a 35 % rate increase for all of its Texas LTC Policies designed to provide care for its Senior Citizen Market and created a letter reflected in the letter its claims it sent to Mrs. Sorensen dated 11/14/06, Bankers Life under took the a special relationship of claiming – whether Bankers Life actually mailed Mrs. Sorensen the letter in light of the email set out in ¶ 1 105, supra,, is a Fact Issue. Alternatively, without waiving any of the foregoing, if Bankers Life, in fact, mailed Mrs. Sorensen the letter dated 11/14/06 stating that the "New Policy" had an effective that was in smaller print in the upper right-hand corner, Bankers Life made specific financial recommendations to Mrs. Sorensen as for which Option of the three options the letter set out, albeit confusing, would be in her best interest. By undertaking to advise a woman of approximately 80 years of age about matters involving care in case of a medical crisis, deterioration or other policy conditions, all of which Mrs. Sorensen met, Bankers created a Special Relationship with Mrs. Sorensen that created a common law Duty of Good Faith and Fair Dealing.

Bankers also formed a Special Relationship with Plaintiff Kresten Sorensen that gave rise to a common law Duty of Good Faith and Fair Dealing.

By providing Mr. Sorensen detailed information, and misrepresenting the terms and existence of Mrs. Sorensen's LTC Policy, after Bankers knew form Mrs. Sorensen second application, based on Bankers misinforming her or failing to disclose the existence of her LTC Policy, or questions about it, in light of the email reflected in ¶ 1105, *supra,* incorporated by reference herein, Bankers had sufficient information to give rise to a Duty to Investigate whether or not Mrs. Sorensen, in fact, had LTC coverage.

## Causation

37.   Each and every breach by Bankers Life of its LTC Insurance Contract with Mrs. Sorensen, formed by the Original Policy and the purported letter dated on or about 11/14/06 constitute a material and substantial breach, separately, together or in any combination and constitute a cause of all of Plaintiffs' damages that flow naturally and normally from their contractual depictions.

In this regard, Plaintiff Kresten Sorensen experienced a severe alteration of his lifestyle, and sustained physical and emotional manifestations of Bankers Life's gross multiple breaches of its contract of which he was a Third Party Beneficiary and all a direct beneficiary in that he was entitled to Caregiver Training under the Policy.  These damages have a substantial monetary value.

The LTC Policy existed as a Matter of Law because Mrs. Sorensen met all of the conditions precedent under the original Policy and the letter of 11/14/06, that Bankers Life asserts she received, whether or not she in fact received.

Each and every act and/or omission of Bankers Life, as set out in this pleading, whether taken together, separately or in any combination constitute a proximate and/or producing cause of all of her damages from the wrongful acts and/or omissions that Bankers Life committed or acts that it should have taken to correct a wrong its was actually aware of at least as early as March 28, 2008, *supra*.

## Attorney's Fees

38.   It was necessary for Plaintiffs to hire the undersigned Lawyers to prosecute this case.

Upon Final Hearing or Trial, Plaintiffs prays that the Court award Plaintiffs or their attorney's all reasonable and necessary attorney's fees and costs of Court for Defendant's breaches of their Insurance Contracts with Mrs. Sorensen (the Policy and letter dated 11/14/06), and reasonable and necessary attorney's fees and all costs of this litigation, and fees and costs for any appeal or effort to appeal this case to the Fifth Circuit Court of Appeals or after such an appeal the Court award Plaintiffs any and all necessary attorney's fees should Defendant or Plaintiff apply for a Writ of Certiorari to the United States Supreme Court,  fees and costs for any response required and for any argument, briefing and all costs of an Appeal from the Fifth Circuit Court of Appeals to the United States Supreme Court at rates commensurate with the skills and abilities of Lawyers that Plaintiffs require to assist them in such a specialized area of Law Practice.

## Damages

39.   Upon final haring or Trial Plaintiffs pray that the Court award them the following damages and if necessary they have an appropriate Election of Remedies at the proper time in this case:

a)   A sum of money to be awarded to the Estate of Wanda Sorensen for the anxiety and fear

she suffered due to Plaintiff's tortious conduct toward her for failure to provide her with her benefits during her lifetime pursuant to her dignity and self-esteem due to the derivation of Mrs. Sorensen's LTC benefits intentionally, knowingly and maliciously and or recklessly caused Mrs. Sorensen, Senior Citizen, in the amount of #150,000.00.

b) The Estate seeks damages of the sums that Mrs. Sorensen paid to Bankers Life that became unearned premiums in the amount of $12,062.42 that was withheld intentionally and knowingly for Wanda Sorensen's benefit, at the rate of interest Bankers Life has earned on its net proceeds or net profit, compounded annually as interest, and trebling of this amount for Bankers Life intentional, knowing and reckless violations of the DTPA and Unfair Claims Settlement Practices Act as set out above such amount be treble trebled;

c   Mental anguish for the severe emotional and mental distress that Defendants' acts and/or omissions have caused Plaintiff Kresten Sorensen in the amount of $350,000.00 for the experience he endured due to Defendants' knowing, intentional and reckless conduct and/or negligence, negligence per se and/or gross negligence.

d.   For loss of consortium with his Mother the amount of #200.000.00.

e.   Upon proper findings under the DTPA and/or Unfair Claims Settlement Practices Act that Plaintiffs be awarded treble damages upon a finding that Defendants' wrongful conduct as set a out above was performed knowingly, intentionally and;/or recklessly and/or multiple damages as provided by these Laws.

f. An 18 percent penalty for all funds withheld by Bankers life, compounded annually.

## Exemplary Damages

**f.   Pursuant to the proper standards of the Texas Civil Practices & Remedies Code, Plaintiffs pray for Exemplary Damages for Defendants' wanton, willful, malicious and intentional and/or reckless conduct in this matter  in a minimum conduct upon a finding of Fraud by the Jury, malice and/or gross negligence by Clear and Convincing Evidence unanimous verdict as provided by Tex. Civ. Prac. & Rem. Code Chapter 41 or an amount equal to any noneecono9mic damages not to exceed $750,000.00.**

## Prayer

Wherefore, Premises Considered Plaintiffs pray that they have:

(a) a Trial by Jury in this cause;

(b) Judgment against Defendants for all of their damages, as set out above, including actual damages, any damages to be multiplied under the provisions of the DTPA and/or Unfair

Claims Settlement Practices Act, damages for Breach of Contract, Fraud, Negligence, Negligence Per Se, Breach of the Common Law Duty of Good Faith and Fair Dealing as set out above. This paragraph incorporates by reference Plaintiffs' damages paragraph.

(c) For Exemplary Damages as pled for above.

(d) For an 18 percent penalty on funds withheld by Bankers Life.

(e) Reasonable and necessary attorneys' fees as set out above and all costs of this litigation.

(f) For any and all other relief to which they may show themselves to be entitled at Law or in Equity.

                              Respectfully submitted,


                              */s/ Kenneth D. McConnico*
                              The McConnico Law Firm
                              State Bar No. 13449000
                              830 Apollo Street
                              Houston, TX 77058
                              (281) 286-7779 Office
                              (281) 286-9990 Fax
                              ken@mcconnicolaw.com

                    ATTORNEY-IN-CHARGE FOR PLAINTIFFS


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of **PLAINTIFFS' AMENDEDCOMPLAINT** is being served upon the following counsel-of-record in this case on this, the 5th day of January, 2016 as follows:

Lance V. Clack, Esquire
FIGARI & DAVENPORT, LLP,
3400 Bank of America Plaza,
901 Main Street
Dallas, Texas, 75202

Steven K. Huffer, Esquire
S, K. HUFFER & ASSOCIATES
12821 East New Market Street  Suite 250
Carmel, IN 46032

Steven A. Wisch, Esquire
440 Louisiana Street
Houston, Texas, 77006-3521

                              */s/ Kenneth D. McConnico*